UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert and Debra Carideo,
 Plaintiffs

 v.                                   Case No. 18-cv-911-SM
                                      Opinion No. 2019 DNH 025
PennyMac Loan Services, LLC,
 Defendant

**O R D E R**

In January of 2018, defendant, PennyMac Loan Services, LLC ("PennyMac") foreclosed the mortgage deed to plaintiffs' home. Seven months later, plaintiffs, Robert and Debra Carideo, brought this action seeking to recover for various injuries and harms they say PennyMac inflicted upon them. PennyMac moves the court to dismiss all claims advanced against it, asserting that none states a viable cause of action. For the reasons given, that motion is granted in part and denied in part.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

## Background

The pertinent facts, as stated in plaintiffs' amended complaint and as they appear in recorded, publicly-available

documents, are largely undisputed. In April of 2012, plaintiffs obtained a loan in the principal amount of $192,632. As security for that loan, they conveyed a first mortgage deed to Mortgage Electronic Registration Systems, Inc., as nominee for the lender, Alpine Mortgage, LLC. That mortgage deed was duly recorded in the Hillsborough County Registry of Deeds. Three years later, in May of 2015, that mortgage was assigned to PennyMac. The assignment was also duly recorded in the registry of deeds.

After plaintiffs defaulted on the promissory note, PennyMac instituted foreclosure proceedings. Plaintiffs did not seek to enjoin those proceedings. See generally N.H. Rev. Stat. Ann. ("RSA") 479:25, II(c). On January 11, 2018, PennyMac (through a licensed auctioneer) conducted a foreclosure sale, at which PennyMac was the high bidder. It purchased the property for $197,019.70 and recorded the foreclosure deed in the registry of deeds. At the time, the town of Pelham, New Hampshire, assessed the value of the property at $269,000. Amended Complaint at para. 19. Thus, the sale price at the foreclosure auction was approximately 73 percent of assessed value.[1]

---

[1] Plaintiffs assert, without factual support, that they believe the property might have been worth as much as $300,000.

Seven months after the foreclosure sale, plaintiffs instituted this action in state court. Defendant removed the proceeding to this forum, invoking the court's diversity jurisdiction. See 28 U.S.C. §§ 1441 and 1446. See also 28 U.S.C. § 1332.

The parties engaged in informal settlement discussions, during which former counsel to PennyMac agreed that his client would review plaintiffs' application for a "post-foreclosure loan modification." Plaintiffs completed and submitted such an application. Approximately two weeks later, however, current counsel for PennyMac informed plaintiffs that, "we have discussed your proposal with our client, but they are not inclined to review the Plaintiffs for a loan mod post-foreclosure." After it became clear that settlement was unlikely, plaintiffs filed an Amended Complaint. In turn, PennyMac filed the pending motion to dismiss.

### Discussion

As a preliminary matter, the court notes that Plaintiffs' Amended Complaint contains a count captioned "Fraud, Conversion, Theft by Deception, Civil RICO," in which they advance claims against several individuals and one limited liability company (the "California Entities"). But, plaintiffs acknowledge that

4

they never attempted to serve any of those individuals or the corporation. See Suggestion of Bankruptcy (document no. 17) ("[I]t would not make economic sense for the beleaguered plaintiffs in this case to spend additional money attempting to serve [the California Entities]."). Plaintiffs have also informed the court that the California Entities have filed for bankruptcy protection, in a proceeding currently pending in the Central District of California. Those parties were never properly joined as defendants in this proceeding and, should plaintiffs wish to pursue any claims against them, plaintiffs must, of course, first seek leave of the bankruptcy court and obtain relief from the automatic stay in that case. Because the California Entities were never properly served, all claims against them are dismissed without prejudice.[2]

As for PennyMac, plaintiffs' Amended Complaint (document no. 9), advances six state common law causes of action. The court will address each in turn.

---

[2] Although the record is unclear, it seems that the California Entities operated some type of business purporting to assist homeowners who had defaulted on their mortgage loans. Plaintiffs apparently enlisted their services (and paid them a fairly substantial amount of money). Ultimately, however, the California Entities provided no useful assistance to plaintiffs, who now claim they were victims of a fraudulent scheme.

5

I.  Count 1 - "Plea of Title"

Plaintiffs' first claim is that PennyMac lacked the legal authority to foreclose the mortgage. Plaintiffs' reasoning is, however, somewhat confusing. They claim that more than three months <u>after the foreclosure sale occurred</u>, they "received paperwork [from one of the California Entities] indicating that the Mortgage was Assigned and [the] Note was and [sic] endorsed over to West H&A and no longer held by the Defendant PennyMac." Amended Complaint at para. 29. See also Exhibit C to Amended Complaint, "Assignment of Mortgage" (document no. 9-3) (purporting to have been executed on March 19, 2018 - well after the foreclosure sale). Perhaps not surprisingly, however, the Amended Complaint fails to describe how a mortgage assignment, prepared (but never recorded) <u>after</u> the foreclosure sale, could have affected PennyMac's authority to foreclose the mortgage deed. Moreover, plaintiffs appear to acknowledge that the untimely mortgage assignment was prepared without lawful authority as part of the fraud scheme to which they say they fell victim (as discussed in their claims against the California entities). See, e.g., Amended Complaint at para. 73 ("The [California Entities] lied to the Carideos, took their money, took their mortgage payments, gave them false hope, false promises, and also, although it remains to be proved, <u>it appears that they also provided fraudulent mortgage and note documents</u>

and caused the Carideos' home to be taken by PennyMac.") (emphasis supplied).

As PennyMac points out: (1) the documents of record make clear that PennyMac was the lawful holder of the mortgage deed to plaintiffs' home when it conducted the foreclosure sale; and (2) a post-foreclosure, fraudulent effort to transfer that mortgage deed (or the promissory note it secured) to a third party is of no legal moment in this case.

Moreover, because plaintiffs failed to exercise their statutory right to seek to enjoin the foreclosure sale before it occurred, they are now barred from challenging PennyMac's legal authority to conduct that foreclosure. See RSA 479:25, II (failure to institute a pre-foreclosure petition to enjoin the foreclosure sale "shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure."). See also Bank of N.Y. Mellon v. Dowgiert, 169 N.H. 200, 205 (2016) (failure of mortgagor to seek pre-foreclosure injunction under RSA 479:25, II bars subsequent challenge to mortgagee's authority to foreclose the mortgage deed); Brown v. Wells Fargo Home Mortg., 2016 DNH 102, 2016 WL 3440591, at *3 (D.N.H. June 20, 2016) ("Because the Browns did not petition to enjoin the foreclosure sale before it occurred,

to the extent that any of their claims challenge the foreclosure's validity and that they seek to have the sale undone, the Browns are barred from doing so.") (footnote omitted).

Count 1 of plaintiffs' amended complaint fails to state a viable cause of action and must, therefore, be dismissed.

II. Count 2 - "Promissory or Equitable Estoppel"

The claim advanced in count two of plaintiffs' amended complaint is somewhat atypical. In it, plaintiffs assert that during settlement negotiations aimed at resolving this litigation, PennyMac's legal counsel represented that PennyMac was "willing to review" plaintiffs' application for a loan modification. Amended Complaint at para. 36. See also Exhibit B to Amended Complaint (document no. 9-2), E-mail from PennyMac's former counsel, dated September 18, 2018. Approximately ten days later, however, PennyMac's counsel informed plaintiffs that "We discussed your proposal with our client, but they are not inclined to review the Plaintiffs for a loan mod post-foreclosure." E-mail dated October 8, 2018 (document no. 12-6). Shortly thereafter, settlement negotiations broke down and plaintiffs amended their complaint to include this claim based upon PennyMac's representation that

it was "willing to review" plaintiffs' settlement proposal - that is, that the parties modify the underlying loan on which plaintiffs had defaulted.[3]

Despite the caption to count two - "Promissory or Equitable Estoppel" - plaintiffs advance only a claim for the former. Apparently recognizing that the facts of this case do not support a claim for "equitable estoppel," they no longer press that claim and do not object to its dismissal. See generally Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 290, 608 A.2d 840, 853 (1992) (discussing the distinction between equitable estoppel and promissory estoppel).

In support of their promissory estoppel claim, plaintiffs assert that they detrimentally relied upon PennyMac's representation that, in an effort to settle this litigation, it was "willing to review" their proposal (and application) to modify their loan post-foreclosure. As evidence of their

---

[3] At this preliminary stage of the litigation, the record is, not surprisingly, sparse. But, the amount PennyMac paid at the foreclosure sale - $197,019.70 - suggests that it bid the entire amount then outstanding on plaintiffs' loan. Indeed, plaintiffs themselves refer to that amount as the "alleged deficiency" on the loan. Amended Complaint at para. 19. It is, therefore, unclear what a "post-foreclosure loan modification" would involve, since the foreclosure sale appears to have extinguished plaintiffs' loan obligations and there is no deficiency amount still owed.

9

detrimental reliance, plaintiffs say they "maintained this lawsuit [which they initiated], and incurred significant expense, as well as delayed or forewent other actions, in reliance on that promise." Amended Complaint at para. 38. They assert that "PennyMac must be estopped from breaching that promise, or representation, and should review the Carideos for loan modification as they say they would." Id. at para. 42.

In their opposition to PennyMac's motion to dismiss, plaintiffs expound upon that claim, and the factual claims supporting it, as follows:

> Plaintiff's claim for Promissory Estoppel has merit. PennyMac's lawyer represented that they "are willing to review" the Carideo's for modification. Then, [legal counsel] apparently convinced their client otherwise, and breached that promise. It is not only impolite and unreasonable, but also illegal under the law - a promise was made, and relied upon by the Carideos who have now been <u>severely harmed by this ongoing litigation</u> maintained by PennyMac's successor counsel depriving all parties from any reasonable resolution. Thus, they should be estopped and directed to review the Carideos for modification in good faith on financial terms which appear to leave them qualified.
>
> The promise was both definite and certain - they are willing to review - and the Carideos foreseeably and reasonabl[y] relied on that as any beleaguered homeowner would.
>
> To the extent that there is any question as to those facts, they must be resolved in favor of the Plaintiffs at this nascent Motion to Dismiss stage.

Objection to Motion to Dismiss (document no. 13) at 3-4 (emphasis supplied). In short, plaintiffs seem to allege that PennyMac broke its promise - on which they justifiably relied to their detriment - that it would (or was willing to) consider plaintiffs' proposed settlement offer.

New Hampshire common law provides that, under the doctrine of promissory estoppel, "a promise reasonably understood as intended to induce action is enforceable by one who relies upon it to his detriment or to the benefit of the promisor." Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 738 (1988) (citing Restatement (Second) of Contracts § 90 (1981)). See also Great Lakes Aircraft, 135 N.H. at 290 (noting that, in the absence of an express agreement, the doctrine of promissory estoppel "serves to impute contractual stature based upon an underlying promise, and to provide a remedy to the party who detrimentally relies on the promise.").

Count 2 of plaintiffs' amended complaint fails to set forth the elements of a plausible and viable claim for promissory estoppel. Among other things, it fails to allege that plaintiffs reasonably relied to their detriment in any meaningful way upon the settlement proposal that PennyMac offered: to consider plaintiffs for a post-foreclosure loan

11

modification.  See generally Bowser v. MTGLQ Inv'rs, LP, 2015 DNH 149, 2015 WL 4771337, at *3 (D.N.H. Aug. 11, 2015) ("The court cannot reasonably infer that the [plaintiffs] could have avoided foreclosure or would have "been better off in any way, but for their reliance on [their loan servicer's] supposed promise to consider them for a loan modification.") (quoting MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 497 (1st Cri. 2013) (applying Massachusetts law)).  See also Ruivo v. Wells Fargo Bank, N.A., 2012 DNH 191, 2012 WL 5845452, at *5 (D.N.H. Nov. 19, 2012).

Moreover, the record suggests that PennyMac did "consider," but rejected, plaintiffs' settlement proposal that PennyMac re-work the loan on terms plaintiffs could afford.  See E-mail from PennyMac's Legal Counsel dated October 8, 2018 (document no. 12-6) (noting that counsel discussed plaintiffs' settlement proposal with PennyMac, but PennyMac determined that it was not willing to re-work the terms of plaintiffs' loan).  And, of course, PennyMac was under no legal obligation to settle this litigation simply because plaintiffs believed they had offered a resolution that was fair, just, and equitable.  See Plaintiffs' Memorandum in Opposition (document no. 13) at 1 (despite knowing that plaintiffs had been "defrauded by a sophisticated nationwide mortgage scheme . . . and with the knowledge that

their own agent had authorized a resolution which could have made everyone whole by way of modification - successor counsel instead presses forward with this defense blindly pursuing what may be his legal prerogative, but to their client's detriment, to the homeowners' detriment, to the Investors on the Note/Mortgage's detriment.").

Count 2 of plaintiffs' amended complaint fails to state a viable claim for either equitable estoppel or promissory estoppel and must be dismissed.

III. Breach of Fiduciary Duty

Next, plaintiffs assert that PennyMac breached the fiduciary duty of due diligence it owed to plaintiffs by conducting a commercially unreasonable foreclosure sale, at which it obtained an unreasonably low purchase price. Specifically, they allege that PennyMac: failed to adequately establish a pre-foreclosure reserve or "strike" price (it is unclear whether PennyMac had an appraisal of the property); neglected to adequately advertise the foreclosure auction and/or the fact that the initial auction was postponed; conducted a "deficient" auction; and, finally, sold their home at auction for an unreasonably low price which deprived them of (what they claim was) approximately $100,000 of equity in the home.

Crediting those allegations as true - as the court must at this stage - they are sufficient (if barely) to state a viable claim that PennyMac failed to conduct the foreclosure auction in accordance with its fiduciary obligation to act with due diligence. See generally Murphy v. Financial Dev. Corp., 126 N.H. 536, 540 (1985) ("[A] mortgagee executing a power of sale is bound both by the statutory procedural requirements and by a duty to protect the interests of the mortgagor through the exercise of good faith and due diligence.").[4]

Parenthetically, the court notes that plaintiffs do not advance any claim that PennyMac breached its fiduciary duty of good faith. And, it probably bears noting (just so all parties are clear on the precise contours of what is being alleged) that the factual allegations of the amended complaint would not support a claim that PennyMac breached its duty of good faith. See generally People's United Bank v. Mountain Home Developers, 858 F. Supp. 2d 162 (D.N.H. 2012) (concluding that while

---

[4] PennyMac disputes plaintiffs' assertions and says the auction was conducted in strict compliance with the terms of the mortgage and all relevant New Hampshire laws governing foreclosure sales, including the obligations borne by foreclosing entities when a previously scheduled foreclosure is postponed. It also disputes plaintiffs' assertion that the property had a fair market value of at least $300,000. Those, however, are issues more appropriately resolved on summary judgment.

plaintiffs stated a viable claim for breach of the duty of due diligence, they failed to state a claim for breach of the duty of good faith). See also Murphy, 126 N.H. at 541-42 ("We first note that the duties of good faith and due diligence are distinct. One may be observed and not the other, and any inquiry as to their breach calls for a separate consideration of each. In order to constitute bad faith there must be an intentional disregard of duty or a purpose to injure.") (citation and internal punctuation omitted).

IV. Count 4 - Unjust Enrichment

Next, plaintiffs assert that PennyMac has been unjustly enriched by failing to obtain an adequate sale price for plaintiffs' home, acquiring title for itself at the foreclosure sale, and (at least potentially) retaining the ability to sell the home to a third party at a "significant profit." Amended Complaint at para. 57. As the New Hampshire Supreme Court has observed,

> Unjust enrichment is an equitable remedy that is available when an individual receives a benefit which would be unconscionable for him to retain. It is not a boundless doctrine, but is, instead, narrower, more predictable, and more objectively determined than the implications of the words unjust enrichment. One general limitation is that unjust enrichment may not supplant the terms of an agreement. It is a well-established principle that the court cannot allow recovery under a theory of unjust enrichment when
15

> there is a valid, express contract covering the
> subject matter at hand. This is so because
> restitution is subordinate to contract as an
> organizing principle of private relationships, and the
> terms of an enforceable agreement normally displace
> any claim of unjust enrichment within their reach.

Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669-70 (2013) (citations and internal punctuation omitted) (emphasis in original).

To the extent plaintiffs have any viable claim for unjust enrichment, it is entirely derivative of their breach of fiduciary duty claim. That is, plaintiffs can only prevail if they first demonstrate that PennyMac violated the fiduciary duties imposed upon mortgagees by the New Hampshire Supreme Court in Murphy. Nevertheless, at this preliminary stage of the litigation, the court is inclined to allow plaintiffs to proceed with their unjust enrichment claim. See generally Riggieri v. Caliber Home Loans, Inc., 2016 DNH 128, 2016 WL 4133513, at *9 (D.N.H. Aug. 3, 2016) (suggesting that under limited circumstances "a claim for unjust enrichment may be viable, despite the mortgage agreement, if the defendant obtained title to the property based on impropriety or misconduct in the foreclosure proceeding."). Whether PennyMac engaged in impropriety or misconduct in the foreclosure proceeding can

likely be resolved on a more complete record, at summary judgment.

V. <u>Remaining Claims</u>.

Plaintiffs two remaining claims - negligence (count 5) and breach of the covenant of good faith and fair dealing (count 6) - require little discussion. Neither states a viable claim for relief.

Plaintiffs negligence claim is based upon their assertion that PennyMac was "negligent" insofar as it failed to give adequate public notice of its decision to postpone the originally-scheduled foreclosure sale and failed to sell the property at a commercially reasonable price. Those duties are imposed by the New Hampshire Supreme Court's opinion in <u>Murphy</u>, New Hampshire statutory law governing foreclosure sales, and, perhaps, the terms of the mortgage deed itself. <u>See</u> <u>Murphy</u>, 126 N.H. at 540. Plaintiffs have properly pled a breach of fiduciary duty claim. They do not, however, have an independent common law claim that, by violating those statutory and/or fiduciary duties, PennyMac was also negligent.

But, say plaintiffs, PennyMac also breached a duty to "detect and alert the Carideos to the apparent mortgage fraud of

[the California Entities]." Amended Complaint at para. 61. Simply stated, PennyMac had no such duty - whether at common law, under New Hampshire statutory law, the terms of the mortgage, or the holding in Murphy. Under the circumstances pled, plaintiffs have no negligence claim against PennyMac and, therefore, that count must be dismissed.

Finally, plaintiffs assert that PennyMac violated the covenant of good faith and fair dealing that is implicit in all New Hampshire contracts. Specifically, they assert that PennyMac's "actions have been patently inconsistent with fairness, decency and reasonableness." Amended Complaint at para. 66. Moreover, say plaintiffs, PennyMac violated that covenant "by their failure to work with the Plaintiffs and to obtain an adequate price at auction." Id. at para. 67. This court has previously addressed, and rejected, such claims under similar circumstances. See, e.g., People's United Bank, 858 F. Supp. 2d at 169 (discussing conduct that qualifies as a violation of the duty of good faith). See generally McCarthy v. WPB Partners, LLC, 2017 DNH 222, 2017 WL 4675742, at *7 (D.N.H. Oct. 16, 2017); Sharp v. Deutsche Bank Nat. Tr. Co., 2015 DNH 155, 2015 WL 4771291, at *8 (D.N.H. Aug. 11, 2015); Ruivo, 2012 WL 5845452, at *3–4.

Plaintiffs' claim that PennyMac violated the covenant of good faith and fair dealing fails to state a viable claim for relief and must be dismissed.

## Conclusion

For the foregoing reasons, as well as those set forth in defendant's legal memoranda, defendant's motion to dismiss (document no. 12) is granted in part and denied in part.

Plaintiffs' claims of "Plea of Title" (count 1), "Promissory or Equitable Estoppel" (count 2), Negligence (count 5), and Breach of the Covenant of Good Faith and Fair Dealing (count 6) are all dismissed for failure to state a viable claim for relief.  And, because the California Entities were never properly served and joined as defendants in this proceeding, plaintiffs' claim of "Fraud, Conversion, Theft by Deception, Civil RICO" (erroneously captioned as count 8) is dismissed without prejudice.

What remain, then, are plaintiffs' claims of Breach of the Fiduciary Duty of Due Diligence (count 3) and, at least tentatively, Unjust Enrichment (count 4).

**SO ORDERED.**

                                                         Steven J. McAuliffe
                                                         United States District Judge

February 14, 2019

cc:  John F. Skinner, III, Esq.
     Michael Joseph Reed, Esq.
     Kevin P. Polansky, Esq.